UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 6257 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| URBAN PARTNERSHIP BANK, RESIDENTIAL | ) | |
| CREDIT SOLUTIONS, INC., and SHOREBANK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Barbara Thomas brought this suit against Urban Partnership Bank, Residential Credit Solutions, Inc. ("RCS"), and ShoreBank. Her central allegation is that Urban has sought to collect payments from her on her mortgage loan even though it does not own the loan. The amended complaint asserts numerous claims, organized into the following six counts: (1) violation of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; (2) quiet title under Illinois law; (3) fraud, conversion, and unjust enrichment under Illinois law; (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq.*; (5) violation of the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 *et seq.*; and (6) violation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* Doc. 33. Urban has moved to dismiss the amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Doc. 35. The motion is granted in part and denied in part.

### Background

In considering the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d

630, 632 (7th Cir. 2012). The court also must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Thomas's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Thomas as permitted by the complaint and the other materials that must be considered on a Rule 12(b)(6) motion. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Some basic facts about the mortgage industry put this case in context. Persons who own real property can take out mortgage loans from banks and other lending institutions; the loan is secured by the mortgaged property, meaning that if the borrower fails to repay the loan as required by the loan agreement, the lender can foreclose on the property in satisfaction of the loan. The task of collecting payments on the loan as they become due, applying the payments to the loan principal and interest, and otherwise dealing with the borrower is called "servicing" the loan. The owner of the loan—meaning the entity that is entitled to receive the loan payments, whether the lender or some other entity to which the lender has sold the loan—may but need not service the loan, for there is an industry of third-party firms that service loans. Banks often sell the loans they originate to other institutions; one such institution is the Federal National Mortgage Association, commonly known as Fannie Mae. Fannie Mae was created by the federal government to buy loans from banks as a way of providing banks with fast access to capital and thereby encouraging them to make more loans. Fannie Mae does not service the loans it owns, but rather contracts with third parties to perform that task on its behalf.

Thomas owns and possesses the property that is the subject of this suit. Doc. 33 at ¶¶ 6, 10. Urban and ShoreBank are banks. *Id*. at ¶¶ 7, 9. RCS is a corporation that services

mortgages for non-party Fannie Mae. *Id*. at ¶¶ 1, 8. In 2006, Thomas signed a promissory note and a mortgage agreement to mortgage her property to ShoreBank in exchange for a mortgage loan. *Id*. at ¶¶ 1, 11-12; Doc. 33-2 (the note); Doc. 33-3 (the mortgage).

ShoreBank serviced the loan itself for the first several years; in July 2010, RCS sent a letter to Thomas notifying her that RCS would now be servicing the loan. Doc. 33 at ¶¶ 1, 14; Doc. 33-4 (the letter). RCS serviced Thomas's loan from July 2010 through August 2011. Doc. 33 at ¶ 14. Although the letter does not say on whose behalf RCS was servicing Thomas's loan, Thomas alleges Fannie Mae had purchased the loan from ShoreBank and that RCS was servicing the loan on Fannie Mae's behalf. *Ibid*. Thomas asserts that when a new servicer begins to service a mortgage, "this event means that the underlying mortgage probably has been sold at the same time; otherwise there is no reason to switch servicers." *Ibid*. Also, as of July 2010, there was a commitment in force between Fannie Mae and ShoreBank under which Fannie Mae would buy loans held by ShoreBank that were modified under the Making Home Affordable Modification Program ("HAMP"). *Id*. at ¶¶ 1, 13; Doc. 34-2 (the commitment). In April 2010, Thomas applied for received a HAMP modification of her mortgage. Doc. 33 at ¶¶ 1, 13; Doc. 34-3 (Thomas's HAMP application). For these reasons, Thomas alleges "upon information and belief" that Fannie Mae owns the promissory note and the mortgage. Doc. 33 at ¶ 1.

In August 2010, ShoreBank went into receivership, with the FDIC acting as receiver. *Id*. at ¶¶ 1, 15. That same month, the FDIC and Urban entered into a Purchase and Assumption Agreement ("Agreement") pursuant to which Urban purchased assets held by ShoreBank. *Ibid*.; Doc. 33-5 (the Agreement). Central to this litigation, and disputed by the parties, is the question whether Thomas's mortgage loan was among the assets Urban purchased from ShoreBank; Thomas says no, while Urban says yes. Doc. 33 at ¶ 1. Thomas believes that her loan had

already been transferred to nonparty Fannie Mae in or before July 2010, prior to the date of the

Agreement, in which case the loan could not have been among the assets transferred by the

Agreement from ShoreBank to Urban. *Ibid*.

Thomas also believes that even if ShoreBank continued to own her loan as of the date of

the Agreement, the Agreement did not transfer the loan to Urban. In debating this point, the

parties focus on two sections of the Agreement. The first, § 3.1, provides:

> 3.1 <u>Assets Purchased by Assuming Institution</u>. With the exception of
> certain assets expressly excluded in Sections 3.5 and 3.6, the Assuming
> Institution hereby purchases from the Receiver, and the Receiver hereby sells,
> assigns, transfers, conveys, and delivers to the Assuming Institution, all right,
> title, and interest of the Receiver in and to all of the assets (real, personal and
> mixed, wherever located and however acquired) including all subsidiaries,
> joint ventures, partnerships, and any and all other business combinations or
> arrangements, whether active, inactive, dissolved or terminated, of the Failed
> Bank whether or not reflected on the books of the Failed Bank as of Bank
> Closing. Assets are purchased hereunder by the Assuming Institution subject
> to all liabilities for indebtedness, collateralized by Liens affecting such Assets
> to the extent provided in Section 2.1 Notwithstanding Section 4.8, the
> Assuming Institution specifically purchases all mortgage servicing rights and
> obligations of the Failed Bank.

Doc. 33-5 at 17. The "Failed Bank" is ShoreBank, the "Assuming Institution" is Urban, and the

"Receiver" is the FDIC, acting as receiver of ShoreBank. *Id*. at 6. The second section is § 3.3,

which states:

> 3.3 <u>Manner of Conveyance; Limited Warranty; Nonrecourse; Etc</u>. *The*
> *conveyance of all assets, including real and personal property interests,*
> *purchased by the assuming institution under this agreement shall be made, as*
> *necessary, by receiver's deed or receiver's bill of sale*, "as is", "where is",
> without recourse and, except as otherwise specifically provided in this
> agreement, without any warranties whatsoever with respect to such assets,
> express or implied, with respect to title, enforceability, collectibility [*sic*],
> documentation or freedom from liens or encumbrances (in whole or in part),
> or any other matters.

Doc. 33-5 at 18 (emphasis added). In the Agreement, § 3.3 printed in boldface and mostly

capital letters, which implies a particular emphasis. Pointing to the language italicized by the

court, Thomas alleges that no receiver's deed or receiver's bill of sale was made conveying the promissory note and mortgage from the FDIC to Urban. Doc. 33 at ¶ 17. Urban has not sought to dispute this assertion by submitting any such deed or bill of sale.

In September 2011, Urban began holding itself out as servicer of the loan and began sending mortgage bills to Thomas. *Id.* at ¶ 18; Doc. 33-6 (letter from Urban to Thomas stating: "[E]ffective 9/1/2011, we are providing loan servicing on your account. … Effective 9/1/2011, your previous loan servicer, Residential Credit Solutions, will no longer accept payments for your loan. Beginning 9/1/2011, please make your payments to Urban Partnership Bank at the address provided below."). Thomas paid several of these bills. Doc. 33 at ¶ 18. But at some point, Thomas stopped paying. Thomas alleges that Urban has damaged her credit and that she received a letter from Urban's law firm in November 2012 stating that the mortgage is now in default and that Urban intends to foreclose on Thomas's property. Doc. 33 at ¶¶ 1, 19; Doc. 34-4 (letter from Urban's law firm to Thomas).

## Discussion

Believing that Thomas must establish that Urban does not own her mortgage loan in order to succeed on any of her claims, Urban first argues that the materials that the court can consider on a Rule 12(b)(6) motion establish that Urban is indeed the loan's owner. Doc. 36 at 3-6. In the alternative, assuming that Urban's ownership of Thomas's loan cannot be established on the pleadings, Urban advances grounds for dismissing each of Thomas's claims. *Id.* at 6-15.

## I.        Whether The Pleadings Establish That Urban Owns Thomas's Mortgage

Thomas advances two arguments for the proposition that Urban does not own her mortgage. First, she argues that ShoreBank had already transferred the mortgage to Fannie Mae before ShoreBank transferred its remaining assets to Urban pursuant to the Agreement. Doc. 33

at ¶ 16 ("The [Agreement] does not convey any mortgage loans from FDIC to [Urban]. It does not state that Urban Partnership purchased all mortgage loans owned by ShoreBank. This is no accident; the parties to the [Agreement] understood that many mortgage loans originated by ShoreBank could not be conveyed by the [Agreement], because ShoreBank had already securitized and sold off those loans to other entities."). Second, Thomas argues that even if ShoreBank still held her mortgage when its assets were transferred to Urban pursuant to the Agreement, the Agreement did not transfer *all* of ShoreBank's assets and in particular did not transfer her mortgage. The court is satisfied that the amended complaint sufficiently alleges that ShoreBank had transferred the mortgage to Fannie Mae prior to ShoreBank's failure and that Urban therefore could not have received the mortgage under the Agreement. It is therefore unnecessary to consider Thomas's second argument.

Thomas alleges that RCS began servicing her loan effective August 1, 2010, several weeks before ShoreBank's remaining assets were transferred to Urban under the Agreement, and that RCS is Fannie Mae's approved servicer. Thomas further alleges that she received a HAMP modification in April 2010, and that there was at the relevant time a contract between ShoreBank and Fannie Mae providing that Fannie Mae would buy loans held by ShoreBank that received HAMP modifications. Doc. 33 at ¶¶ 1, 13-14, 16. Thomas infers from these alleged facts that ShoreBank had in fact sold the loan to Fannie Mae before ShoreBank's assets were transferred to Urban pursuant to the Agreement. Although Thomas does not provide any document directly supporting that inference, her allegations are sufficient for purposes of a motion to dismiss. One can reasonably infer from the alleged facts that ShoreBank had sold her loan to Fannie Mae and that this is why RCS began servicing the loan. That is not a *necessary* inference from her allegations, but it is a reasonable one, and the court must make all reasonable inferences in the

nonmovant's favor in considering a Rule 12(b)(6) motion. *See Citadel Group Ltd. v. Washington Regional Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012) ("We construe the amended complaint in the light most favorable to Citadel, accept Citadel's well-pleaded facts as true, and draw all reasonable inferences in Citadel's favor.").

Urban submits that Thomas's belief that ShoreBank sold the loan to Fannie Mae is "speculative." Doc. 36 at 5. That characterization ignores the specific factual allegations noted above, which make it reasonable to infer that Fannie Mae purchased the loan. Urban also points out that Thomas "does not allege that she has been contacted by Fannie Mae (or anyone else) for payment or in any way related to the servicing of her Loan. Of course, she cannot allege that she has ever made a payment to Fannie Mae either." *Id.* at 5 n.1. But where, as here, a complaint's allegations are sufficient to establish a fact for Rule 12(b)(6) purposes, the plaintiff's failure to include other allegations that might have established that fact more firmly does not warrant dismissal. A requirement that a complaint include every factual allegation that might support the plaintiff's claims would effectively nullify Rule 8(a)(2)'s requirement of only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x 614, 616 (7th Cir. 2011) ("To cross the [Rule 8(a)(2)] threshold, a plaintiff must provide enough details about the subject matter of the case to present a story that holds together.").

Next, Urban argues that "the letter upon which [Thomas] relies in assuming that the Loan was transferred to Fannie Mae expressly states that ShoreBank merely transferred the servicing of the Loan to RCS and that ShoreBank's rights under the Loan's documents are not otherwise affected." Doc. 36 at 5. Were the second part of this sentence true, then Thomas might have pleaded herself out of court by attaching to the complaint a document that refuted her assertion

that ShoreBank sold the loan to Fannie Mae. *See Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("when a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*") (internal quotation marks omitted); *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."). But Urban is wrong to maintain that the letter "expressly states … that ShoreBank's rights under the Loan's documents are not otherwise affected." What the letter says is that "[t]he assignment, sale or transfer of the servicing of your mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan." Doc. 33-4 at 2. That the substitution of one servicer for another does not alter the rights and obligations created by the loan agreement is an unremarkable proposition; it hardly implies that the loan itself has not been transferred—after all, if Fannie Mae had purchased the loan, it would have assumed ShoreBank's rights and obligations—and the quoted material says nothing about "ShoreBank's rights under the Loan's documents." Urban also is wrong to maintain that the letter "expressly states that ShoreBank merely transferred the servicing of the Loan to RCS." The letter says that RCS had taken over servicing the loan from ShoreBank, but there is no "merely"; the letter does not say or imply that ShoreBank had not transferred ownership of the loan as well.

Finally, Urban asserts that "[h]ad she investigated her claim prior to filing, [Thomas] would know that RCS served as ShoreBank's servicer. Indeed, had she read [RCS's letter to Thomas] in its entirety, she would have known that fact." Doc. 40 at 3. Urban does not point to any particular sentence or paragraph of RCS's letter to Thomas (Doc. 33-4), and the court does not perceive any indication in that letter that RCS had been retained by ShoreBank to service the

loan. The letter simply does not say on whose behalf—ShoreBank's, Fannie Mae's, RCS's, or anyone else's—RCS was undertaking that task. And Urban fails to point to any allegation of Thomas's or to any other passage in the documents attached to her complaint that supports the proposition that RCS was acting as ShoreBank's servicer.

Thus, for purposes of Rule 12(b)(6), the court will proceed on the premise that Fannie Mae bought the loan from ShoreBank and that Fannie Mae, not Urban, has been the owner of the loan since July or August 2010. If this premise is not factually accurate, then Urban should have little difficulty demonstrating that fact on summary judgment or at trial.

## II.    Alternative Grounds for Dismissal

Urban advances alternative grounds for dismissing each of Thomas's claims, which are addressed in turn.

### A.    Count I: FDCPA

As relevant here, the FDCPA provides:

> **§ 1692e. False or misleading representations**
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
> (2) The false representation of—
>     (A) the character, amount, or legal status of any debt; …
> (4) The representation or implication that nonpayment of any debt will result in the … seizure, garnishment, attachment, or sale of any property … unless such action is lawful …
> (5) The threat to take any action that cannot legally be taken …
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false …
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt …

**§ 1692f. Unfair practices**
A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. §§ 1692e, 1692f. The FDCPA defines "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," and further provides that "[t]he term does not include (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6).

Thomas asserts that Urban is a "debt collector" and violated the above-quoted FDCPA provisions by making false representations in connection with its attempt to collect her mortgage loan debt. Urban is a "debt collector," Thomas says, because it has used the mails to attempt to collect a debt "owed or due another." This argument rests on the premise that Urban does not own the loan, and since the court accepts that premise for Rule 12(b)(6) purposes, it also accepts that Urban is a debt collector under the FDCPA. Urban disputes this, and while the facts may prove it right, Urban cannot obtain dismissal under the standards that govern resolution of a Rule 12(b)(6) motion.

Urban also argues that Thomas "ignores the paradox in her pleading that requires its dismissal. … Plaintiff claims that the [Agreement] transferred the servicing rights to ShoreBank's Loans to [Urban]. Therefore, according to Plaintiff's allegations and interpretation of the [Agreement], [Urban] had the right to service the Loan and send the notices that Plaintiff alleges violated the Collection Acts. Simply, Plaintiff cannot maintain that [Urban] only

acquired the servicing rights while simultaneously alleging that [Urban] violated the Collection

Acts by *servicing* and collecting on the Loan." Doc. 40 at 6-7; *see also* Doc. 36 at 7 (same).

There is no paradox here. Thomas has not alleged that Urban rightfully held even the right to

service her loan. Urban's brief cites ¶ 16 of the amended complaint for the proposition that

Thomas "claims that only the mortgage servicing rights to her Loan were transferred." Doc. 36

at 3. But ¶ 16 alleges: "The [Agreement] does not convey any mortgage loans from FDIC to

[Urban]. It does not state that [Urban] purchased all mortgage loans owned by ShoreBank. This

is no accident; the parties to the [Agreement] understood that many mortgage loans originated by

ShoreBank could not be conveyed by the [Agreement], because ShoreBank had already

securitized and sold off those loans to other entities." Doc. 33 at ¶ 16 (citing Doc. 33-5 (the

Agreement)). Nothing in ¶ 16 implies even obliquely that the Agreement *had* transferred

servicing rights to Urban. True, § 3.1 of the Agreement provides that "the Assuming Institution

[Urban] specifically purchases all mortgage servicing rights and obligations of the Failed Bank

[ShoreBank]." Doc. 33-5 at 17. But ShoreBank had transferred the loan to Fannie Mae (or so

the court assumes at this juncture) and the servicing rights to RCS several weeks before it

entered into the Agreement, Doc. 33-4, and it therefore no longer had them to sell to Urban at the

time of the Agreement. So this argument is rejected, and because Urban makes no other

arguments for dismissal of the FDCPA claim, the court denies its motion to dismiss Count I.

### B.     Count II: Quiet Title

In her quiet title claim, Thomas alleges that all three Defendants—ShoreBank, Urban,

and RCS—"are competing claimants to an interest in [her property] adverse to that of [Thomas]"

and that those competing claims "constitute clouds on title." Doc. 33 at ¶ 38. "[A] suit to quiet

title is functionally a form of declaratory judgment action." *Samuel C. Johnson 1988 Trust v.*

*Bayfield Cnty.*, 649 F.3d 799, 801 (7th Cir. 2011). Thomas seeks a declaration that Urban, RCS, and ShoreBank have no right to seek to collect mortgage payments from her, and says that such a declaration would remove the cloud on her title that they have created by purporting to have such a right. Doc. 33 at ¶¶ 40-41, 45, 46(a). Her aim, it seems, is to have the court determine who owns the mortgage loan. *Id.* at ¶ 46 ("All mortgagors have a duty to make payments to the correct mortgagee. Only with a declaratory judgment can Plaintiff know to which party to make their mortgage payments.").

An Illinois Supreme Court decision quoted by Urban explains that "to constitute a cloud there must be a semblance of title which is, in fact, unfounded and which casts a doubt upon the validity of the record title." *Hill v. 1550 Hinman Ave. Bldg. Corp.*, 6 N.E.2d 128, 134 (Ill. 1936). Does Urban's claim that it owns the loan and the servicing rights to the loan amount to a "cloud" on Thomas's title to her property? Urban says no: "[Thomas] has not alleged that [Urban] has done anything but assert a right in an *existing* mortgage, nor can she. Asserting a right to a mortgage placed on the Property in 2007 (more than three years before [Urban] even existed) is not placing a cloud on title. The Mortgage exists, regardless of who holds it and [Urban's] claim to the Property is based solely on that Mortgage. Plaintiff cannot be heard to complain that the Mortgage she admits to signing is now a cloud on title caused by [Urban]." Doc. 36 at 8. Urban is right that Thomas does not contend that she does not owe *anyone* money under the loan; she simply argues that she does not owe Urban anything and seeks a declaration to that effect. Doc. 39 at 15. The key question, then, is whether a dispute over who owns a mortgage that concededly exists can amount to a cloud on title.

Urban thinks not, but it does not cite any authority to support its view, aside from the above-quoted sentence from *Hill*. Doc. 36 at 7-36; Doc. 40 at 7-8. Is Urban's claim that it owns

the mortgage a "semblance of title" within the meaning of *Hill*? Urban does not explain why it is

not, and so it has forfeited the argument, at least for Rule 12(b)(6) purposes. *See Judge v. Quinn*,

612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that

are unsupported by pertinent authority, are waived") (internal quotation marks omitted). At any

rate, as stated above, an action to quiet title is a sort of declaratory judgment action, and what

Thomas requests is, in substance, a declaration as to whether or not Urban (or ShoreBank or

RCS) currently holds any rights related to the mortgage. Thomas is entitled to request a

declaratory judgment to that effect—and any ruling on her FDCPA claim would be likely to

entail a determination of Urban's rights anyhow—so not much turns on whether the label "quiet

title" is properly applied to her request. The motion to dismiss Count II is denied.

### C. Count III: Fraud, Unjust Enrichment, and Conversion

Thomas alleges that Urban defrauded her by causing her to make mortgage payments to it

when it lacked any legal right to collect those payments; that it was unjustly enriched by those

payments; and that Urban is engaging in conversion by foreclosing on her real property and

thereby diminishing its value to Thomas. Doc. 33 at ¶¶ 47-64. Although Thomas pleads them in

a single count, these three legal theories are distinct and will be addressed separately.

"In order to state a cause of action for common law fraud [under Illinois law], a

complaint must allege (1) a false statement of material fact, (2) knowledge or belief of the falsity

by the party making it, (3) intention to induce the other party to act, (4) action by the other party

in reliance on the truth of the statements, and (5) damage to the other party resulting from such

reliance." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992)

(internal quotation marks omitted); *see also Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d

430, 434 (7th Cir. 1996) ("Under Illinois law … the elements of common law fraud are: (1) a

false statement of material fact; (2) by one who knows or believes it to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance.").  Moreover, a plaintiff alleging fraud in federal court must plead it with the particularity required by Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "The circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (internal quotation marks omitted); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

Thomas has failed to satisfy these requirements.  With respect to the allegedly false statements made by Urban, she alleges:

> 51.    The evidence shows that the Ms. Thomas's Note and Mortgage were sold before ShoreBank collapsed.  Specifically, Co-Defendant, [RCS], began holding itself out as the servicer of the Plaintiff's loans, at least twenty-five days before [Urban] claims it purchased the Note and Mortgage.

> 52.    Furthermore, a contract existed between Fannie Mae and ShoreBank to buy ShoreBank's loans that were to be modified under the Home Affordable Modification Program (HAMP).  Ms. Thomas's loan would have fallen in this category as she applied for, and received, a modification of her Mortgage under this program.

> 53.    Despite this, Defendant [Urban], knowing that ShoreBank had been in financial trouble, began representing to the Ms. Thomas that it was the true holder of her Note and Mortgage, without verifying whether ShoreBank still owned the Note and Mortgage, without proper transfer under the Uniform

Commercial Code and without the receiver's deed or bill of sale as required under paragraph 3.3 of the [Agreement].

54.    By making these representations, it is plausible that Defendant Urban Partnership acted without regard to the truth of who owned the Plaintiff's Note and Mortgage and wished the Plaintiff, Ms. Thomas, to act by submitting mortgage payments to them, which she did.

Doc. 33 at ¶¶ 51-54.  It is not "plausible," based on Thomas's factual allegations, that Urban

"acted without regard to the truth of who owned [Thomas's] Note and Mortgage."  At best,

Thomas's factual allegations establish that ShoreBank transferred the mortgage loan to Fannie

Mae rather than to Urban and that Urban, which had acquired numerous assets of the failed

ShoreBank pursuant to the Agreement, was unaware of this and failed to find out, and instead

believed that it had become owner of the mortgage and acted on that belief by seeking payments

from Thomas.  Acting "without regard to the truth" is not fraud, which instead requires

"knowledge or belief of the falsity [of the allegedly fraudulent statement] by the party making

it." *Hartigan*, 607 N.E.2d at 174.  In other words, "[a] claim for fraud … requires a showing

that, at the time the allegedly fraudulent statement was made, it was an intentional

misrepresentation." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir.

2007) (emphasis removed).  Thomas has not alleged that Urban knew that its claims to rights

under her loan were false at the time it made them, and nor is that a reasonable inference from

the facts that she has alleged.  Therefore, Thomas's fraud claim must be dismissed, though the

dismissal is without prejudice and Thomas will be given a chance to replead.  *See* Fed. R. Civ. P.

15(a) ("The court should freely give leave [to amend] when justice so requires."); *Bogie v.*

*Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief,

the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the

complaint to correct the problem if possible."); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th

Cir. 2010) ("As a general matter, Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint or other pleading.").

"In Illinois, to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (brackets and internal quotation marks omitted). Thomas claims that Urban was unjustly enriched when she made loan payments that Urban was not entitled to receive because it has no rights under the loan. Doc. 33 at ¶¶ 57-61. Urban's argument for dismissal of this claim is very brief: "Plaintiff does not allege that any other servicer has made a competing claim to the mortgage payments. Further, she does not allege how she is entitled to the return of the funds. Plaintiff's allegations are simply too vague and conclusory to state a claim." Doc. 36 at 11.

This argument has not merit. Thomas clearly alleges that she owes *someone* money under the mortgage loan and that that someone is not Urban, and so it is irrelevant that no one else is currently making claims to her mortgage payments. If Thomas is correct that she owes money to someone other than Urban, then by paying Urban she has lost money without reducing the debt she owes to the loan's true owner. *See Bank of Naperville v. Catalano*, 408 N.E.2d 441, 444 (Ill. App. 1980) ("As a general rule, where money is paid under a mistake of fact, and payment would not have been made had the facts been known to the payor, such money may be recovered. The fact that the person to whom the money was paid under a mistake of fact was not guilty of deceit or unfairness, and acted in good faith, does not prevent recovery of the sum paid, nor does the negligence of the payor preclude recovery."); Restatement (Third) of Restitution and Unjust Enrichment § 6 (2011) ("Payment of Money Not Due. Payment by mistake gives the

payor a claim in restitution against the recipient to the extent payment was not due."); *id*. at

comment c ("Mistake as to liability. A payor's mistake as to liability may well be a mistake

about the identity of the creditor. In such a case, the payor believes that an obligation runs to the

payee when in fact the obligation is to someone else."); *id*. at Illustration 5 ("Tenant, believing

that rent is payable to A, pays rent to A. In fact, Tenant owes rent, not to A, but to B. Tenant

has a claim in restitution against A."). That amounts to the enrichment of Urban to Thomas's

detriment, since Thomas has lost and Urban has gained money for nothing. And it is not clear

what Urban means when it says that Thomas "does not allege how she is entitled to return of the

funds." If, as Thomas adequately alleges, Urban had no right under the mortgage loan to the

payments it received and Thomas made the payments on the mistaken premise that Urban was

the loan's owner, then "fundamental principles of justice, equity, and good conscience" require

that Urban disgorge the payments; at any rate, Urban does not suggest that they do not.

    "To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2)

he has an absolute and unconditional right to the immediate possession of the property; (3) he

made a demand for possession; and (4) the defendant wrongfully and without authorization

assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 890 N.E.2d

446, 461 (Ill. 2008); *see also Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439

(7th Cir. 2005) ("In order to recover for conversion in Illinois, a plaintiff must show: (1) a right

to the property; (2) an absolute and unconditional right to the immediate possession of the

property; (3) a demand for possession; and (4) that the defendant wrongfully and without

authorization assumed control, dominion, or ownership over the property."). Thomas alleges

that the "property" at issue is the real property subject to the mortgage loan and that Urban is

converting it by wrongfully foreclosing on it. Doc. 33 at ¶ 63. Urban counters that a claim for

conversion pertains only to personal property, not to real property. *See In re Thebus*, 483 N.E.2d 1258, 1260-61 (Ill. 1985); Restatement (Second) of Torts § 222A ("Conversion is an intentional exercise of dominion or control *over a chattel* which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.") (emphasis added).

In her brief opposing dismissal, Thomas argues only that "what the Defendant fails to acknowledge is that the conversion in this situation is not necessarily one involving funds, but rather personal and real property." Doc. 39 at 18. The reference to "personal" property is wholly conclusory; neither the amended complaint nor Thomas's brief refer to any personal property that Urban has taken from her. Because the law does not permit Thomas to state a "conversion" when only real property is at issue, her conversion claim must be dismissed. As with the fraud claim, the dismissal is without prejudice to repleading.

As to Count III, then, the fraud and conversion claims are dismissed without prejudice while the unjust enrichment claim survives.

### D. Count IV: UDTPA and ICFA

Thomas alleges that Urban violated the UDTPA and the ICFA by holding itself out as the holder of her mortgage loan, by demanding payments under the loan, and by threatening to foreclose on her property. The UDTPA sets forth a list of "deceptive trade practices" and states that "[a] person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable." 815 ILCS 510/2, 3. Urban does not argue that Thomas has failed to adequately allege that it engaged in one or more of the practices listed in the UDTPA. Rather, Urban contends that Thomas has asked for a form of relief—damages—that the UDTPA does not permit. This argument rests on a badly mistaken

premise, for Count IV clearly requests injunctive relief and does not mention damages. Doc. 33 at ¶ 74 & pp. 24-25 (requesting relief for the UDTPA claim).

Urban next argues: "Plaintiff has failed to adequately allege an IUDTPA injury. The act limits plaintiffs to those 'likely to be damaged by a deceptive trade practice of another…' *See* 815 ILCS 510/3. Plaintiff has not alleged that she is a borrower or a prospective borrower who may do business with a lender and be damaged by the purported deceptive trade practices of the defendants concerning her loan. Nor does she allege any *future* harm resulting from the allegedly deceptive trade practices. Absent such allegations, plaintiffs' claim must be dismissed." Doc. 36 at 12; *see also* Doc. 40 at 8-9. Urban does not explain the basis for its belief that Thomas must "allege[] that she is a borrower or a prospective borrower who may do business with a lender and be damaged by the purported deceptive trade practices of the defendants concerning her loan." Certainly that requirement does not follow directly from the UDTPA's being limited to plaintiffs "likely to be damaged by a deceptive trade practice of another"—there are many other ways to be damaged by a deceptive trade practice—and Urban does not point to any authority that does erect such a requirement. And Urban is wrong to say that Thomas does not "allege any future harm resulting from the allegedly deceptive trade practices." In fact, the amended complaint alleges that "the Defendant's threat of foreclosure creates a future harm to the Plaintiff, which is the exact sort of future harm by persons 'damaged by a deceptive trade practice of another' that the Illinois Legislature sought to prevent by passing the IUDTPA," and that "[n]ot only does the Plaintiff risk losing her home [to a foreclosure by Urban], but she also risks having to pay the same claim twice to the true mortgagee." Doc. 33 at ¶¶ 67, 74. Nothing in Urban's threadbare argument shows that this insufficiently alleges a potential future harm that could justify injunctive relief.

The ICFA provides in relevant part:

> § 2.  Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the [UDTPA] in the conduct of any trade or commerce are hereby declared unlawful ….

815 ILCS 505/2.  The ICFA prohibits "[u]nfair methods of competition and unfair *or* deceptive acts or practices," *ibid*. (emphasis added), which means that a plaintiff can state a good claim by sufficiently alleging that the defendant engaged in trade practices that were either unfair or deceptive.  *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("A plaintiff is entitled to recovery under ICFA when there is unfair or deceptive conduct.  A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive.") (citation omitted). *Pappas v. Pella Corp.*, 844 N.E.2d 995, 1002-03 (Ill. App. 2006) ("the statute is in the disjunctive … [r]ecovery may be had for unfair as well as deceptive conduct") (internal quotation marks omitted).

A private plaintiff seeking to state an ICFA deceptive trade practices claim must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by that deception." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002).  When a plaintiff instead alleges unfairness, the court must consider three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Id*. at 1002.  Thomas claims that Urban's actions were both unfair and deceptive.  Doc. 39 at 21 ("It is the position of Mrs. Thomas that the Defendant has

acted fraudulently, and that alternatively, its actions are immoral, offend public policy and harm consumers.").

After briefly setting out the elements of an ICFA claim, Urban contends only that "Plaintiff's conclusory statements that [Urban] 'willfully' acted in 'violation' of the ICFA are plainly insufficient to state an ICFA claim.  Plaintiff does not plead the required elements, nor does she offer any well-pled facts sufficient to support her conclusory statements demanding recovery under the ICFA.  Count IV should be dismissed as a matter of law."  Doc. 36 at 13 (citations omitted).  In its reply brief, Urban adds only that Thomas "also pleads mere conclusions insufficient to withstand a motion to dismiss.  Plaintiff's bold assertions in her Response that she has pled claims do not remedy the actual defects in her pleading.  She has alleged nothing but conclusory statements without *any* facts to support them.  The claims must be dismissed."  Doc. 40 at 8-9.  Urban's argument that the ICFA claim is fatally conclusory is itself fatally conclusory, untethered to the particulars of either the ICFA or this litigation.  Urban makes no attempt to apply its boilerplate to the particular allegations in the amended complaint.  Urban does not explain why each of Thomas's allegations is conclusory, which elements it thinks she fails to plead and why, or why it believes the facts she alleges are not well-pled.

In fact, although Count IV contains several conclusory assertions, it also includes the following factual allegations of wrongdoing by Urban: "Urban Partnership has passed off its services as those of the servicer and/or mortgagee of the Note and the Mortgage"; "Urban Partnership holds itself out to Ms. Thomas as the servicer and/or the mortgagee when it is not"; "Urban Partnership is not the mortgagee … [, it] is not authorized by the mortgagee to collect payments under the Note and the Mortgage … [, and it] cannot release the Mortgage if Ms. Thomas were to make all payments under the Note to Urban Partnership"; and "Urban

Partnership Bank holds itself out, falsely, as the servicer and/or mortgagee, without admitting or disclosing the identity of the true mortgagee of the Subject Property." Doc. 33 at ¶¶ 69-72. Urban makes no effort to explain why these allegations do not suffice to state an ICFA claim, and has therefore forfeited the argument for purposes of its Rule 12(b)(6) motion. *See Judge*, 612 F.3d at 557 ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (internal quotation marks omitted). The motion to dismiss is denied as to Count IV.

### E.    Count V: ICAA

Thomas's ICAA allegations closely track her FDCPA allegations in Count I, and Urban treats them together in urging dismissal. Doc. 36 at 6-7 ("[t]he ICAA mirrors the FDCPA"); Doc. 40 at 6-7. Because the court has rejected Urban's arguments for dismissing the FDCPA claim, and because Urban does not make any further arguments that are specific to the ICAA claim, Urban's motion to dismiss Count V is denied.

### F.    Count VI: Sherman Antitrust Act

Count VI alleges that Urban and RCS violated § 1 of the Sherman Antitrust Act, which provides:

> § 1.   Trusts, etc., in restraint of trade illegal; penalty
> Every contract, combination in the form of trust or otherwise, or conspiracy,
> in restraint of trade or commerce among the several States, or with foreign
> nations, is declared to be illegal. …

15 U.S.C. § 1. Thomas brings this claim under § 4(a) of the Clayton Act, 15 U.S.C. § 15(a), which creates a private right of action for "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." Thomas alleges that "[t]here is an unreasonable combination or conspiracy in restraint of trade or commerce, by and between Defendants [Urban] and [RCS], to send false bills and to collect on these false bills by

threatening wrongful foreclosure" against Thomas and other mortgagors like her. Doc. 33 at ¶ 96. She further alleges that "[s]aid predatory scheme reduced competition in the relevant markets and is a *per se* violation of the Sherman Antitrust Act" and that "[s]aid anti-competitive, predatory scheme has had a substantial impact on the cost of mortgages in the relevant market by harming borrowers' credit ratings, by causing them to be discharged from their employment, by causing them to incur costs and attorneys' fees, by intentionally inflicting severe emotional harm upon them, and by causing them to send their mortgage payments to the wrong party each month after August, 2012." *Id.* at ¶¶ 98, 107.

A plaintiff asserting an antitrust claim must allege that she has suffered an "antitrust injury," meaning that "her claimed injuries are of the type the antitrust laws were intended to prevent and reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation." *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 716 (7th Cir. 2006) (internal quotation marks omitted). Thomas does not defend her view that a conspiracy to commit fraud among two participants in a market is a "conspiracy in restraint of trade" within the meaning of the Sherman Act, or that increased loan prices that result from a borrower's lower credit rating that result in turn from such fraud constitute "antitrust injury." Indeed, her brief opposing dismissal makes no argument in defense of Count VI whatsoever, even though Urban argued for dismissal of that claim. Doc. 36 at 13-15. By failing to defend it, Thomas has forfeited her antitrust claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (noting that forfeiture occurs "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [plaintiffs] have done here—results in waiver."); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir.

2011) (a party's failure to oppose an argument permits an inference of acquiescence, and "acquiescence operates as a waiver"); *Fiala v. Wasco Sanitary Dist.*, 2012 WL 917851, at *8 (N.D. Ill. Mar. 16, 2012) ("Any argument that this injury provides a basis for RICO standing has been forfeited because Plaintiffs' briefs do not press this point in opposing dismissal; in fact, the briefs do not mention this point at all.").  Claims that a plaintiff fails to defend in opposing a Rule 12(b)(6) motion are deemed abandoned and thus are dismissed with prejudice.  *See Baker v. Chisom*, 501 F.3d 920, 926 (8th Cir. 2007); *Simkus v. United Air Lines, Inc.*, 2012 WL 3133603, at *6 (N.D. Ill. July 31, 2012).

## Conclusion

For the foregoing reasons, Thomas's fraud and conversion claims are dismissed without prejudice, and her Sherman Act claim is dismissed with prejudice.  If Thomas wishes to replead the fraud and conversion claims, she must do so by May 17, 2013.  Thomas's FDCPA, quiet title, unjust enrichment, UDTPA, ICFA, and ICAA claims may proceed.

April 26, 2013

_____
United States District Judge